# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00180-CR

**Juan David Garza, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-08-846, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Juan David Garza, Jr. of the offense of indecency with a child by contact and assessed punishment at nine years' imprisonment and a $5,000 fine.[1] The district court rendered judgment on the verdict and, on the jury's recommendation, suspended imposition of the sentence and placed Garza on community supervision for ten years. In a single issue on appeal, Garza asserts that he received ineffective assistance of counsel during trial. We will affirm the judgment of conviction.

## BACKGROUND

Garza was charged with engaging in sexual contact with his stepdaughter, A.N., by touching her genitals. During trial, A.N., who was by then nineteen years old, testified that when

---

[1] *See* Tex. Penal Code § 21.11(a)(1).

she was eight years old, Garza had entered her bedroom at night, "cuddled with her," and then "pick[ed] [her] up and put [her] on top of him, with [her] legs around the sides of him; and he took his hands under [her] shorts, under [her] underwear, and touching [her] butt towards—[her] vagina in a stroking-type motion." Several days later, A.N. further recounted, she had reported this incident to her mother, Stephanie Jones, and also informed her that Garza had engaged in similar behavior on two or three other occasions. Jones also testified at trial and described A.N.'s account in a manner consistent with A.N.'s testimony. Jones added that she had also confronted Garza with A.N.'s allegations. In response, Jones indicated, Garza had not denied the allegation and had instead become "upset, very apologetic, emotional, crying, saying he was sorry, it was an accident." A.N. similarly testified that Garza had cried and apologized to her "for making [her] feel uncomfortable."

After confronting Garza, Jones had taken no further action in response to her daughter's allegations. Approximately five years later, however, A.N. made an outcry to her aunt, Carrie Jones. Carrie[2] testified that she had discussed the matter with her husband, who had notified CPS. Melissa Rodriguez, the program director of the children's advocacy center in Hays County, subsequently conducted an interview with A.N. in which A.N. told her that Garza had touched her "butt" and her "privates." A video recording of the interview was admitted into evidence. Other evidence considered by the jury, which we discuss in more detail below as it becomes relevant to Moore's issue on appeal, included the testimony of the investigating law enforcement officer, Lieutenant Jeri Skrocki of the Hays County Sheriff's Office; Garza's biological daughter, S.G., who

---

[2] We use her first name to distinguish her from Stephanie Jones.

2

was permitted to testify that Garza had engaged in similar sexual contact with her; and Garza, who denied that he had ever contacted A.N. or S.G. in a sexual manner.

The jury found Garza guilty as charged and assessed punishment as indicated above. After the district court rendered judgment on the jury's verdict and suspended imposition of the sentence, Garza filed a motion for new trial, which was denied by operation of law. This appeal followed.

## JURISDICTION

Before turning to the merits of Garza's appeal, the State argues that we lack jurisdiction because Garza failed to timely file his notice of appeal.[3] As a general rule, a defendant must file his notice of appeal "within 30 days after the day sentence is imposed or suspended in open court."[4] However, a defendant may extend the appellate deadline to 90 days if he "timely files a motion for new trial."[5] A motion for new trial is timely if filed no later than 30 days after the date the trial court imposes or suspends sentence in open court.[6] Garza's sentence was suspended in open court on February 1, 2013. On February 6, he timely filed a motion for new trial, thereby extending the deadline to file his notice of appeal to 90 days. Garza filed his notice of appeal on March 12, 2013, within the 90-day deadline.

---

[3] *See Perez v. State*, 424 S.W.3d 81, 85 (Tex. Crim. App. 2014) ("'A timely notice of appeal is necessary to invoke a court of appeals' jurisdiction.'" (quoting *Olivo v. State*, 918 S.W.2d 519, 522 (Tex. Crim. App. (1996))).

[4] Tex. R. App. P. 26.2(a)(1).

[5] *Id*. R. 26.2(a)(2).

[6] *Id*. R. 21.4(a).

The State contends that Garza's motion for new trial was ineffective to extend the appellate deadline because the record does not demonstrate that he presented that motion to the district court.[7] However, Rule 26.2 extends the appellate deadline upon the timely "filing" of a motion for new trial.[8] There is no additional requirement of presentment. In contending otherwise, the State cites to *Carranza v. State*, in which the Court of Criminal Appeals held that in order to preserve error relating to a trial court's refusal to hold a hearing on a motion for new trial, an appellant is required to both file the motion and present it to the trial court.[9] However, that rule has no effect on the deadline for filing a notice of appeal. Because Garza timely filed his notice of appeal within the 90-day deadline triggered by the timely filing of his motion for new trial, we have jurisdiction over this appeal.[10] Accordingly, we overrule the State's challenge to this Court's jurisdiction.

**MERITS**

In his sole issue on appeal, Garza asserts that his trial counsel rendered ineffective assistance. Specifically, Garza complains that trial counsel provided ineffective assistance by: (1) "opening the door" to the admission of extraneous-offense evidence concerning Garza's alleged sexual contact with his biological daughter, S.G.; (2) failing to call an expert witness to provide

---

[7] *See id.* R. 21.6 ("The defendant must present the motion for new trial to the trial court within 10 days after filing it, unless the trial court in its discretion permits it to be presented and heard within 75 days from the date when the court imposes or suspends sentence in open court.").

[8] *See id*. R. 26.2.

[9] *See* 960 S.W.2d 76, 79-80 (Tex. Crim. App. 1998).

[10] *See* Tex. R. App. P. 26.2(a)(2).

4

testimony concerning false allegations of sexual abuse; and (3) conducting himself "inappropriately" during trial, including being "repeatedly reprimanded" by the district court and ultimately held in contempt.

"Ineffective-assistance-of-counsel claims are governed by the familiar *Strickland* framework: To prevail, the defendant must show that counsel's performance was deficient and that this deficient performance prejudiced the defense."[11] "An attorney's performance is deficient if it is not within the range of competence demanded of attorneys in criminal cases as reflected by prevailing professional norms, and courts indulge in a strong presumption that counsel's conduct was *not* deficient."[12] "If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'"[13] In other words, in the absence of a record explaining the reasons for counsel's decisions, we will not find counsel's performance deficient if any reasonably sound strategic motivation can be imagined.[14]

*Strickland* establishes a similarly high bar for establishing prejudice: "A defendant suffers prejudice if there is a reasonable probability that, absent the deficient performance, the outcome [of the proceeding] would have been different."[15] "A reasonable probability is a probability

---

[11] *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[12] *Id*. (citing *Strickland*, 466 U.S. at 689).

[13] *Id*. at 308 (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012)).

[14] *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

[15] *Nava*, 415 S.W.3d at 308 (citing *Strickland*, 466 U.S. at 694).

sufficient to undermine confidence in the outcome."[16] "It will not suffice for Appellant to show 'that the errors had some conceivable effect on the outcome of the proceeding.'"[17] "Rather, he must show that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"[18]

"It is a rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim."[19] As a result, "claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus."[20]

**Extraneous-offense evidence**

Garza first asserts that his trial counsel rendered ineffective assistance by "opening the door" to the admission of extraneous-offense evidence related to Garza's alleged sexual contact with S.G. S.G. is the biological daughter of Garza and A.N.'s mother, Stephanie Jones, and is thus A.N.'s half-sister. A.N. is the older of the two by approximately ten years.

---

[16] *Id.*

[17] *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693).

[18] *Id.* (quoting *Strickland*, 466 U.S. at 695).

[19] *Nava*, 415 S.W.3d at 308 (citing *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

[20] *Lopez*, 343 S.W.3d at 143 (citing *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002); *Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex. Crim. App. 2004); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)).

In 2011 or 2012, after charges had been filed against Garza in this case, S.G. told A.N. that Garza had touched her genitals, too. At trial, the State initially attempted to elicit evidence of S.G.'s outcry during its direct examination of Stephanie Jones. The district court excluded the evidence at that juncture, sustaining objections by Garza's counsel that the testimony sought to be elicited was inadmissible hearsay and would have an unfairly prejudicial effect substantially outweighing its probative value.[21] However, the district court ultimately permitted the State to explore the subject after Garza's trial counsel extensively cross-examined Jones regarding past statements in which she had purportedly characterized Garza favorably to police investigators as a "great guy" and the "backbone of the family." Concluding that Garza's counsel had "kicked the door wide open on just about any subject inside this family by your cross-examination," the district court permitted the State to elicit testimony from Jones on redirect regarding S.G.'s outcry and later allowed S.G. herself to testify to the underlying alleged conduct.

As support for his assertion that opening the door to extraneous-offense evidence constitutes deficient performance, Garza relies primarily on *Garcia v. State*.[22] During the defendant's testimony in that case, trial counsel asked the defendant if he had "ever sexually assaulted anybody" or had "ever been accused of sexually assaulting anybody," and the defendant answered both questions in the negative.[23] The State then proceeded, during its cross-examination of the defendant and later during its case in rebuttal, to present evidence tending to show that the

---

[21] *See* Tex. R. Evid. 403, 801.

[22] 308 S.W.3d 62 (Tex. App.—San Antonio 2009, no pet.).

[23] *Id*. at 66.

7

defendant had been accused of sexual assault in the past.[24]  Although trial counsel objected to the

admission of this evidence on multiple grounds, the trial court overruled the objections, concluding

that trial counsel had opened the door to the extraneous-offense evidence "by inquiring about prior

sexual assaults as well as by offering evidence of the defendant's good character."[25]  The reviewing

court concluded that counsel's conduct constituted deficient performance:

> Here, by eliciting testimony from Garcia on direct examination broadly disclaiming that he had ever sexually assaulted someone, defense counsel opened the door for the State to cross-examine Garcia, and to present rebuttal evidence of an extraneous offense of the same character as the charged aggravated sexual assault.  Similarly, by eliciting testimony that Garcia was a "law abiding" citizen, defense counsel opened the door for the State to cross-examine Garcia concerning other "bad acts" to correct any false impression created by his direct testimony and to impeach his credibility. . . .  Given the inherently prejudicial nature of extraneous offense evidence, the fact that the evidence would not have been otherwise admissible by the State during guilt/innocence, and the fact that Garcia's defense rested almost entirely on his credibility, there could have been no reasonable trial strategy for Garcia's counsel to elicit and open the door to the similar extraneous offense and the numerous instances of "bad acts."[26]

We conclude that *Garcia* is distinguishable from this case.  Unlike *Garcia*, trial

counsel here did not attempt to "broadly disclaim" that Garza had engaged in other sexual

misconduct or suggest that Garza was a "law-abiding" citizen.  Instead, the focus of counsel's cross-

examination was to emphasize that Jones, while claiming to have heard outcries of child molestation

by Garza, had quite incongruously termed him a "great guy" and the "backbone of the family" to

---

[24]  *Id*.

[25]  *Id*. at 66-67.

[26]  *Id*. at 68 (internal citations omitted).

police investigators thereafter.  In short, counsel's questions were in the nature of impeachment of Jones with prior inconsistent statements, seeking to discredit her prior testimony recounting the alleged outcries and her truthfulness generally.[27]  Counsel likewise divulged on the record that his examination of Jones also sought to elicit evidence "about motive on these people's parts to come up with this tale and to back it up every way they can."

We cannot conclude on this record that this constitutes deficient performance.  Jones was the State's designated outcry witness during trial.[28]  Her credibility was thus a critical issue in the case.  It would not fall below an objective standard of reasonableness for trial counsel, as part of his defensive strategy, to aggressively and thoroughly attack Jones's credibility on cross-examination, including on matters relating to her past favorable observations, opinions, and statements concerning Garza, even if in doing so counsel might have inadvertently opened the door to evidence related to S.G.'s outcry.[29]  On this record, we cannot conclude that trial counsel's

---

[27] In fact, as the district court observed during a bench conference, Garza's counsel mounted "an attack on [Jones's] character for about three of the four hours of cross-examination." Throughout this cross-examination of Jones and other witnesses for the State, counsel repeatedly attempted to attack their credibility and implied that they were lying about various aspects of either the incident or the investigation.

[28] *See* Tex. Code Crim. Proc. art. 38.072.

[29] *See, e.g.*, *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (finding no deficient performance when trial counsel opened door to evidence of extraneous murders allegedly committed by defendant during testimony of State's witness when trial counsel did so in order to show that witness had "a bias as to why she's testifying"); *Johnson v. State*, 432 S.W.3d 552, 558-60 (Tex. App.—Texarkana 2014, pet. ref'd) (finding no deficient performance when trial counsel inadvertently opened door to extraneous offenses when "there is nothing in the record here to suggest that defense counsel purposely elicited extraneous-offense evidence from his client or otherwise intentionally opened the door to such evidence"); *Josey v. State*, 97 S.W.3d 687, 695-96 (Tex. App.—Texarkana 2003, no pet.) (finding no deficient performance when trial counsel opened door to evidence of extraneous sex offense during cross-examination of State's outcry witness;

cross-examination of Jones was outside "the range of competence demanded of attorneys in criminal cases."[30]

**Expert testimony**

Garza next complains of trial counsel's failure to present expert testimony "regarding a child's motives for making false allegations of sexual misconduct against a parent." Such testimony was necessary, Garza contends, to rebut testimony from the State's experts, specifically Jeri Skrocki and Melissa Rodriguez."[31]

Assuming without deciding that the failure to call an expert witness in this case would constitute deficient performance, we cannot conclude on this record that Garza was prejudiced by any such deficiency. To prove prejudice from the failure to call expert witnesses, the record must show that such witnesses were available to testify and that appellant would have benefitted from their testimony.[32] Here, the record contains no such showing. Prior to trial, two individuals were

concluding that "[c]ounsel's inquiry represents an attempt to undermine the credibility of . . . [the outcry witness] . . . . We cannot say attempting to discredit one . . . of the State's primary witnesses is improper trial strategy or otherwise falls below the level of an objectively reasonable standard of conduct"). *Cf. Robertson v. State*, 187 S.W.3d 475, 484-86 (Tex. Crim. App. 2006) (finding trial counsel's performance deficient when counsel *intentionally* elicited testimony from defendant related to defendant's prior convictions, as part of trial strategy to prove that defendant was being truthful).

[30] *See Nava*, 415 S.W.3d at 307.

[31] Skrocki provided testimony relating to the concept of "delayed outcries" and the process of "grooming," whereby an abuser will attempt to "desensitize" a potential victim to make them "feel more comfortable with sexual activity." Rodriguez provided similar testimony relating to the "grooming" process and also provided testimony relating to the fabrication of outcries.

[32] *See Perez*, 310 S.W.3d at 894 (citing *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)); *Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986); *Washington v. State*, 417 S.W.3d 713, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

designated as possible expert witnesses by the defense—Shelley Graham, a licensed professional counselor, and Matthew Ferrara, a psychologist. The specific matters to which they would have testified if called are not disclosed in the record. A third possible expert, identified only as George Parker, was mentioned by trial counsel during a hearing on counsel's motion for continuance. At that hearing, counsel disclosed that Graham "said she doesn't feel competent to testify about a false outcry" and that Parker would not be available to testify until several days after the trial was scheduled to conclude. Additionally, even if Parker had been available to testify, there is nothing in the record summarizing what his testimony would have been. Thus, on this record, there is no way for this Court to determine whether Garza would have benefitted from the testimony of any of the possible experts for the defense. Accordingly, we cannot conclude that there is a reasonable probability that, absent trial counsel's failure to call an expert witness, the outcome of the proceeding would have been different.[33]

**Counsel's behavior during trial**

Finally, Garza asserts that trial counsel was ineffective in the manner in which he conducted himself during trial. Specifically, Garza refers to several occasions in which the district court, outside the presence of the jury, admonished trial counsel for not following the court's instructions and repeatedly disagreeing with the court's evidentiary rulings, including its ruling that

---

[33] *See, e.g.*, *Ex parte Flores*, 387 S.W.3d 626, 638 (Tex. Crim. App. 2012); *Perez*, 310 S.W.3d at 894-95; *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007). *Cf. Ex parte Overton*, 444 S.W.3d 632, 640-41 (Tex. Crim. App. 2014) (finding prejudice prong satisfied when record included summary of expert's qualifications and specific matters to which expert would have testified; concluding that expert's "credibility combined with his testimony would have had a strong impact on the jury and sufficiently undermine[d] the outcome of the trial").

11

counsel had "opened the door" to S.G.'s outcry. Additionally, on the first day of trial, outside the presence of the jury, the district court held trial counsel in contempt after he had asked a witness a question that the court had instructed him not to ask.[34]

Assuming without deciding that counsel's conduct during trial fell below an objective standard of reasonableness, there is nothing in the record to suggest that trial counsel's conduct influenced the jury's verdict in any manner or that the jury would have reached a different verdict absent counsel's conduct. Moreover, the district court's admonishments and sanctions of trial counsel took place outside the presence of the jury. On this record, Garza has failed to demonstrate that there is a reasonable probability that, absent counsel's unprofessional conduct, the result of the proceeding would have been different.[35]

We overrule Garza's sole issue on appeal.

---

[34] During a bench conference, trial counsel had explained to the district court that he intended to question A.N.'s mother regarding an alleged incident in which A.N. had "demanded" that her maternal grandfather assist her in procuring the "day-after abortion pill." The district court responded to the request as follows: "I can't imagine that's relevant. If you want a hearing on that at the end of the day, I'll give it to you, but, no." Almost immediately thereafter, trial counsel proceeded to question the witness regarding the alleged incident, prompting the district court's contempt ruling. Trial counsel insisted that he had not intended to disobey the court, but had merely misunderstood the court's ruling.

[35] *See White v. State*, 190 S.W.3d 226, 230 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Devis v. State*, 18 S.W.3d 777, 785-87 (Tex. App.—San Antonio 2000, no pet.); *see also Hansley v. State*, No. 01-12-01023-CR, 2014 Tex. App. LEXIS 80, at *6-7 (Tex. App.—Houston [1st Dist.] Jan. 7, 2014, pet. ref'd) (mem. op., not designated for publication) ("While trial counsel's behavior and the sanctions meted out by the trial judge suggest a want of professionalism, the alleged events are not sufficient to establish ineffective assistance under *Strickland*."); *Samuels v. State*, No. 05-03-00683-CR, 2004 Tex. App. LEXIS 4575, at *3-4 (Tex. App.—Dallas May 20, 2004, pet. ref'd) (not designated for publication) (counsel being held in contempt does not "invariably" lead to conclusion that counsel provided ineffective assistance).

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed:   April 9, 2015

Do Not Publish