

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00130-CR

_____

BILLY DEE RILEY, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 09F0483-102

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Dissenting Opinion by Justice Carter

OPINION

Billy Dee Riley, Jr., had been convicted of murder in a Bowie County jury trial. The punishment phase evidence had been fully received, during which the primary defense strategy had been to seek community supervision for Riley. In fact, Riley's attorneys had advised him before and during trial that he was qualified to ask for community supervision. But, during the charge conference on punishment, his defense team was surprised to discover that Riley was not eligible for community supervision because he had opted to try the case to the jury. The jury assessed punishment of fifty years' imprisonment.

After seeking and being denied a new trial, Riley appeals the trial court's judgment sentencing him in accordance with the jury's verdict. Riley complains of ineffective assistance of counsel and other grounds.[1] Because we agree with Riley that his counsel's advice regarding availability of community supervision by a jury constituted ineffective assistance of counsel, we reverse and remand for a new trial based on this dispositive issue alone.

Any allegation of ineffectiveness of counsel must be firmly founded in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana

---

[1]In addition to the dispositive ground addressed in this appeal, Riley argued that: (1) the trial court had a duty to admonish him regarding ineligibility of community supervision from a jury; (2) the court failed to include language in the punishment charge requiring rejection of the issue of sudden passion to be unanimous; (3) the punishment charge allowed rendition of a nonunanimous verdict; (4) counsel rendered ineffective assistance in failing to object to the punishment charge; (5) evidence was insufficient to establish the jury's rejection of sudden passion during punishment; and (6) the trial court erred by excluding "certain photographs and testimony."

2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003). Riley bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to the claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *see Strickland v. Washington*, 466 U.S. 668 (1984). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).

Because Riley's challenge was made to the trial court in a motion for new trial, we analyze the ineffective assistance claim as a challenge to the denial of his motion for new trial. *Charles v. State*, 146 S.W.3d 204, 208–10 (Tex. Crim. App. 2004), *superseded by rule on other grounds by State v. Herndon*, 215 S.W.3d 901 (Tex. Crim. App. 2007); *Shanklin v. State*, 190 S.W.3d 154, 158 (Tex. App.—Houston [1st Dist.] 2005), *pet. dism'd*, 211 S.W.3d 315 (Tex. Crim. App. 2007) (reversing for new trial on punishment due to counsel's failure to investigate and present mitigating evidence); *State v. Kelley*, 20 S.W.3d 147, 151 (Tex. App.—Texarkana 2000, no pet.) (grant of motion for new trial based on ineffective assistance was proper). Therefore, we review the *Strickland* test through an abuse of discretion standard, and reverse only if the trial court's decision is arbitrary or unreasonable, viewing the evidence in the light most favorable to the ruling. *Shanklin*, 190 S.W.3d at 158–59. A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Charles*,

146 S.W.3d at 208.

First, Riley must show that counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms. *Strickland*, 466 U.S. at 687–88. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Id.* at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Therefore, we will not second-guess the strategy of Riley's counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd).

Riley's motion for new trial asserted ineffective assistance of counsel and was supported by live testimony and by two affidavits considered by the trial court. The affidavit of Riley's lead counsel, Kyle Davis, stated:

> In addition to me, Defendant's defense team was comprised of attorneys Craig Barrett and Joe Tyler. Prior to trial, and during the course of the trial, each of us advised Defendant that he would be eligible for probation in the event he was convicted of murder. During voir dire examination of the jury panel, both the defense and the prosecuting attorney questioned the prospective jury panel on their opinions of the applicability of probation for a person convicted of murder. During the punishment phase of the trial, the defense called a probation officer to testify concerning the terms and conditions Defendant would have to satisfy if the jury recommended probation in the case. The probation officer never mentioned that Defendant's murder conviction would make him ineligible for probation. Moreover, neither the prosecuting attorney nor the trial judge ever alluded to Defendant's ineligibility for probation during the direct examination and the cross-examination of the probation officer. . . . The first time it was ever mentioned that Defendant's murder conviction would make him ineligible for

4

probation was during the punishment phase charge conference.

Riley's affidavit stated:

> Other than the underlying felony conviction of murder in the above-entitled and numbered cause, I have never before been convicted of a felony in any federal or state court in this or any other state. . . . Prior to trial, and during the course of the trial, each of my attorneys advised me that I would be eligible for probation in the event I was convicted of murder. . . . Had my trial attorneys not given me erroneous advice concerning my eligibility for probation in the event I was convicted of murder, I would have entered an open plea of nolo contendere to the trial court in hopes that the trial court would grant deferred adjudication probation pursuant to Section 5 of Article 42.12 of the Texas Code of Criminal Procedure.

At the hearing on the motion for new trial, Tyler testified that he advised Riley that he would be eligible for community supervision if convicted of murder, that he first became aware of the mistake "after the punishment evidence had been put on but before closing arguments in the punishment phase," and that "the whole punishment phase of the trial, the defense evidence put on was basically arguing for probation." Even the prosecutor testified he was not aware that Riley could not receive community supervision from the jury.

After considering the affidavits of Riley and his counsel and the hearing testimony, the trial court overruled the motion for new trial. Based on this record, we consider Riley's claim of ineffective assistance.

It is undisputed that counsel's belief that Riley could receive community supervision in the event of a murder conviction was erroneous. Sections 3g and 4(d)(8) of Article 42.12 prevent a judge or jury from ordering or recommending community supervision following a conviction of

5

murder. TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 3g, 4(d)(8) (West Supp. 2010). On the other hand, Section 5 of Article 42.12 allows a judge to enter deferred adjudication community supervision after receiving a plea of guilty or nolo contendere to a charge of murder. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(a) (West Supp. 2010); *see Cabezas v. State*, 848 S.W.2d 693, 695 (Tex. Crim. App. 1993). Counsel's misunderstanding on this critical point is documented in the "application for community supervision from the jury" and the fact that each of five punishment witnesses testified on subjects relating to community supervision.

Counsel has a duty to exert best efforts to ensure that the client's decisions are based on correct information as to the applicable law. *Ex parte Wilson*, 724 S.W.2d 72, 74 (Tex. Crim. App. 1987). "An attorney's failure to give competent advice to a defendant which would promote an understanding of the law in relation to the facts and which would permit an informed and conscious choice is error." *Gallegos v. State*, 756 S.W.2d 45, 48 (Tex. App.—San Antonio 1988, pet. ref'd) (after denial of motion for new trial, sister court found counsel ineffective for failing to inform defendant, charged with Article 42.12, Section 3g offense, that his waiver of assessment of punishment by jury would foreclose possible community supervision) (citing *Ex parte Morse*, 591 S.W.2d 904, 905 (Tex. Crim. App. 1980)).

"In assessing competence, we [hold] counsel accountable for knowledge, or the ability to attain knowledge, of relevant legal matters which are neither novel nor unsettled." *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999). Whether Riley was eligible for

6

community supervision from the jury was a settled matter of law that was readily ascertainable. During the hearing on the motion for new trial, although the State asked whether Riley went to trial based on the trial strategy of using self-defense, counsel did not testify that his failure to inform Riley he was ineligible for deferred adjudication was due to any trial strategy.[2] Because there is no evidence suggesting that counsel's failure to inform Riley on this settled matter of law could be considered reasonable trial strategy, the only ruling which could have been made in light of the evidence presented was that counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms. We conclude that the first *Strickland* prong has been met.

The second *Strickland* prong, prejudice, requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have

---

[2]The State argues that the defense team's strategy was to argue and present evidence of self-defense. This reasoning might have been persuasive if a record in this was not developed demonstrating counsel's reasoning. In this case, it is undisputed, however, that this strategy was developed through counsel's misunderstanding of the law. Riley's affidavit stated that, had he known he would not be eligible to receive community supervision from the jury, he would have asked the trial court for deferred adjudication community supervision. The decision on how to plead is ultimately the sole province of the defendant. The State also argues, "When asked whether or not entering an open plea to the trial court for murder based on this set of facts would have been a viable trial strategy from him," Riley's trial counsel replied, "[t]he likelihood of that would be small." However, the question is not what counsel's advice would be when faced with Riley's uncontested affidavit that his plea would have been different, but rather, whether counsel's failure to advise Riley that he was ineligible for community supervision if found guilty by a jury was due to any reasonable trial strategy. Next, the State points to the inclusion of lesser included offenses for the proposition that counsel's failure to inform his client that he would not be eligible for community supervision by a jury was due to some trial strategy. This theory was not presented to the trial court during the hearing on the motion for new trial; thus, counsel did not testify that the inclusion of lesser included offenses was a part of a trial strategy justifying failure to inform Riley that he would be ineligible for community supervision by a jury. *See generally Ramirez v. State*, 301 S.W.3d 410 (Tex. App.—Austin 2009, no pet.) (rejecting State's argument that counsel's mistake to have trial court assess punishment following conviction of Article 42.12, Section 3g offense was based on trial strategy where record revealed otherwise).

7

been different. *Strickland*, 466 U.S. at 687–88. Reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.* at 694. *Strickland*'s second prong carries a lower burden of proof than the preponderance of the evidence. *See Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990); *Strickland*, 466 U.S. at 694. An appellant need not show that counsel's deficient performance more likely than not altered the outcome of the case. *Milburn v. State*, 15 S.W.3d 267, 269 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

In *State v. Recer*, 815 S.W.2d 730 (Tex. Crim. App. 1991), the Texas Court of Criminal Appeals held that

> [t]o support a claim for ineffective assistance of counsel where, as in this case, the complaint is that counsel misunderstood the law regarding [community supervision] . . . . [t]here must be evidence that the defendant was initially eligible to receive [community supervision], that counsel's advice to go to the [jury][3] for sentencing was given as a part of a valid trial strategy, that the defendant's decision to have the [jury] assess punishment was based on his attorney's erroneous advice, and that the defendant's decision would have been different if [his] attorney had correctly informed [him] of the law.

*Id.* at 731–32.

We have already established that counsel misunderstood the law regarding deferred adjudication community supervision and that his advice to Riley could not have been based on a valid trial strategy, given the evidence before the trial court. Also, in this case, it is undisputed that Riley was initially eligible to be considered for deferred adjudication community supervision

---

[3]Although *Recer* was decided in a different posture, in which counsel's advice led to punishment assessment by the trial court, we find the test in *Recer* instructive.

from the trial court.[4]   Riley's affidavit, and the affidavit of his counsel read into the record at the hearing—both of which the trial court considered as evidence—stated that, absent counsel's erroneous advice, Riley would have pled nolo contendere and would have asked the trial court for deferred adjudication community supervision.   The evidence of Riley's plea had he received the proper advice was not disputed by the State.

Therefore, the evidence has conclusively shown that:   (1) Riley could have been eligible to be considered for community supervision; (2) counsel's advice to use the jury for sentencing was not part of a valid trial strategy; (3) Riley's decision to use the jury for punishment was based on counsel's erroneous advice; and (4) Riley's decision would have been different if counsel had correctly informed him of the law regarding community supervision.   *Recer*, 815 S.W.2d at 731; *Garcia v. State*, 308 S.W.3d 62 (Tex. App.—San Antonio 2009, no pet.); *Isham*, 258 S.W.3d at 252.

Riley also argues that, under *Hill*, his plea was involuntary.   "[T]he voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Moody*, 991 S.W.2d at 857–58 (citing generally *Hill*, 474 U.S. 52; *Strickland*, 466 U.S. 668;

---

[4]The State concedes Riley's initial eligibility.   "We believe the Court of Criminal Appeals included the word *initially* to require that the defendant's eligibility be determined as of the filing of the punishment election rather than at the time of the punishment hearing." *Isham v. State*, 258 S.W.3d 244, 253 (Tex. App.—Eastland 2008, pet. ref'd) (referring to *Recer*, 815 S.W.2d 730).   Riley's punishment election was made several months before trial.

*McMann v. Richardson*, 397 U.S. 759 (1970); *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997)). These cases present opposite factual scenarios in which the defendant has pled guilty. They are predicated on the theory that the defendant has given up a valuable right—the right to a jury trial.

Here, Riley cannot argue that he gave up the valuable right to a jury trial; however, counsel's action did foreclose the possibility of deferred adjudication community supervision. "The right to [community supervision] is valuable." *Thompson v. State*, 604 S.W.2d 180, 182 (Tex. Crim. App. [Panel Op.] 1982) (citing *Trevino v. State*, 577 S.W.2d 242, 243 (Tex. Crim. App. 1979)). Again, while the following cases present a reverse scenario in which the defendants pled guilty based on erroneous advice from counsel that they could receive community supervision from the trial court, we have found the *Strickland* second prong met where counsel's advice foreclosed any opportunity for community supervision. *See Hart v. State*, 314 S.W.3d 37, 44–45 (Tex. App.—Texarkana 2010, no pet.) (citing *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991)); *Cardenas v. State*, 960 S.W.2d 941, 946–47 (Tex. App.—Texarkana 1998, pet. ref'd); *see also Garcia*, 308 S.W.3d at 73.

Here, the defense team's misunderstanding of the law foreclosed Riley's possibility of receiving deferred adjudication. Because the statute allowed a trial court to impose deferred adjudication community supervision for murder—a possibility deemed reasonable by the Legislature—and counsel's advice foreclosed this option, which the trial court otherwise would

10

have been required to consider, we find, and the uncontested evidence at the motion for new trial demonstrated, there was a reasonable probability that the result of the proceeding would have been different absent the erroneous advice. A finding to the contrary would require us to speculate, without support in the record, regarding whether the trial court would have awarded deferred adjudication community supervision if given the option.[5] That speculation would necessarily have us considering "evidence about the actual process of decision . . . not part of the record of the proceeding under review, and evidence about, for example, a particular judge's sentencing practices"—an exercise forbidden to us. *See Strickland*, 466 U.S. at 695.

Because Riley[6] has met both prongs of the *Strickland* test, we sustain his first issue on appeal.[7] Accordingly, the trial court's judgment is reversed, and this case is remanded to the trial

---

[5]The State cites the following statement made by the trial court as support for the proposition that the result of the proceeding would not have been different absent counsel's error:

> It just—from the motion itself, the issue is one—it's just a legal motion, not hypothetically what the Court would have done or would not have done. The record speaks for itself in that this case went to the jury and the jury has addressed the issue. I feel that I probably—really, I probably can not [sic] state what my opinion is in it, other than the jury verdict speaks for itself, and this Court accepted the jury verdict in this matter and ruled and assessed the punishment as stated by this jury.

We do not consider this a statement by the trial court that it would necessarily have denied deferred adjudication community supervision had Riley entered an open plea of nolo contendere.

[6]We limit our holding to the unique facts of this case.

[7]A few days before its brief was due (and well after the clerk's record was received by this Court), the State attempted to supplement the record with a new affidavit created by the prosecuting attorney averring, among other things, that he "would not have approved the waiver of the right of trial by jury." The Texas Rules of Appellate Procedure provide that the record may be supplemented only "[i]f a relevant item has been omitted from the clerk's record." Tex. R. App. P. 34.5(c)(1); *Amador v. State*, 221 S.W.3d 666, 676–77 (Tex. Crim. App. 2007). It is clear that the State's newly created affidavit was not before the trial court when it ruled on the motion for new trial. We struck the State's affidavit as an improper attempt to avoid Rule 34's purpose to "ensure[] that the record on appeal accurately reflects

11

court for a new trial.


Josh R. Morriss, III
Chief Justice


DISSENTING OPINION

When Billy Dee Riley, Jr., was asked if he killed Terry Matthews, he answered, "Evidence says that." "Q. Did the bullet that killed Terry Matthews come from your gun? A. That's what the evidence proved. Q. So you have no dispute with that? A. It's science."

These events took place at a local night club where a fight began. The security guard attempted to control the altercation by spraying mace or pepper spray, but it apparently had the opposite effect. People ran out of the club, but Riley went to the console of his truck, obtained his gun, put it in his pocket, and went back inside the club building. Riley became engaged in a fight and testified, "I pulled the gun out of my back pocket. The gun . . . went off two times because the safety got jammed." Riley heard shots and began shooting over his shoulder. "And I could see flashes of the guns, and I was shooting and I shot until my gun was clear." The deceased, Matthews, was unarmed. Another witness testified, "Mr. Riley was out of his car and just shooting, randomly shooting." The forensic pathologist testified that the distance between the

all of the evidence that was seen by, used by, or considered by the trial judge at the time he made a ruling." *Amador*, 221 S.W.3d at 677. The State's affidavit will not be considered by this Court.

12

gun and the body was one to four feet.

These are the facts that Riley now says he would have liked to have presented to the trial judge and pled guilty and then ask the judge to defer his murder conviction and place him on community supervision. Upon successfully completing the terms of community supervision, Riley would then have no record of a conviction for this offense.

No doubt the attorneys were deficient in advising Riley that he could ask the jury for community supervision.[8] The real question before us is whether there is a reasonable probability that but for that deficient advice, the result would have been different. This issue has never been presented to an appellate court so far as counsel and this Court can determine after intense research. The majority opinion quotes *State v. Recer* for the requisite proof in this situation. 815 S.W.2d 730, 731–32 (Tex. Crim App. 1991). In *Recer,* the Texas Court of Criminal Appeals found no deficient conduct by the attorney when he advised a defendant that the trial court could assess probation (community supervision) even though a jury had found the defendant used a deadly weapon which precluded such consideration. The facts of that case did not prove the attorney's advice was not based on a valid strategy. So the Texas Court of Criminal Appeals held

---

[8]Experience is a great teacher, but this case points out why lawyers cannot rely on that alone. Prior law allowed a request for probation (community supervision) even in murder cases, and it seems in this case everyone was operating under that perception. The law changed in 2007. Act of April 25, 2007, 80th Leg., R.S., ch. 1205, § 3(5), 2007 Tex. Gen. Laws 4078, 4079.

that the attorney's conduct fell within proper professional standards; consequently, the dicta cited in the majority opinion is not controlling.[9]

We must decide, without controlling precedent, whether these facts lead to the conclusion that it is reasonably probable that if counsel had advised Riley he could plead guilty and ask the judge to defer his guilt and place him on community supervision, a different result would have occurred. I do not think so.

I agree we cannot try to analyze the particular sentencing practices of a judge, but we have the entire record before us and we are to consider what is reasonably probable. This case was hotly contested with Riley urging self-defense, reduction of the charge by a finding of sudden passion, and lesser included offenses. In order for Riley to attempt to obtain a deferred adjudication, he would have to plead guilty and waive all the possible defenses, as well as relieve the State of its burden to prove this murder beyond a reasonable doubt. Had that course of action been taken, Riley would go before the trial judge, after admitting he committed murder, to ask for deferral of the sentence. The trial judge had an opportunity to consider the merits of this allegation at the motion for new trial hearing, but denied the motion. We are to review that decision on an abuse of discretion standard.

It is Riley's burden to prove that it is reasonably probable there would have been a different result had counsel provided accurate advice. The majority opinion details the deficient conduct,

---

[9]In *Recer* the defendant waived his right to have the jury assess punishment whereas here the defendant insisted on that right.

but does not explain how Riley proved that, but for such deficient conduct, a different result was reasonably probable.   Instead, the opinion, in a conclusory fashion, states that Riley has met both prongs of the *Strickland*[10] test.   I do not believe the trial court abused its discretion in denying the motion for new trial.

I respectfully dissent.

Jack Carter
Justice

Date Submitted:      June 15, 2011
Date Decided:        July 29, 2011

Publish

---

[10] *Strickland v. Washington*, 466 U.S. 668 (1984).