

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00101-CR

_____

JOSEPH QUELON HARRIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Red River County, Texas
Trial Court No. CR01786

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

## MEMORANDUM OPINION

Joseph Quelon Harris was convicted by a jury of murdering his uncle. The jury assessed a life sentence, and the trial court sentenced Harris accordingly. Harris complains that his trial counsel was constitutionally ineffective because the trial lawyer told Harris he could be placed on community supervision by the jury when, in fact, community supervision could only be granted if (1) Harris pled guilty or nolo contendre and (2) the trial judge deferred adjudication of guilt and placed Harris on community supervision.[1] Harris also contends the record does not support the trial court's imposition of court costs. We affirm the trial court's judgment.

## I. Factual and Procedural Background

Harris was charged with killing his uncle, John Richard Harris (John), with a machete. At trial, Harris presented a defensive theory, mostly through Harris' own testimony, that John had attacked and threatened Harris with a pistol and machete, which led to Harris defending himself with the machete. John died as the result of thirteen chop wounds. Before trial, Harris elected to have the jury assess punishment, should he be convicted, and filed a motion seeking to be placed on community supervision in lieu of serving any sentence of ten years or less.[2] During voir dire, both the prosecutor and Harris' attorney told the jury panel that Harris was eligible for

---

[1]In 1993, during the 73rd Legislative Session, the statutory term for probation was changed to "community supervision." Both terms refer to the same process and will be used interchangeably in this opinion. *Ivey v. State*, 277 S.W.3d 43, 51 n.48 (Tex. Crim. App. 2009).

[2]Harris's motion claimed he had never been convicted of a felony offense and therefore was eligible for community supervision. The State told the venire that Harris was eligible for community supervision. Both were wrong. By pleading not guilty and electing to have a jury determine guilt or innocence, Harris precluded the consideration of community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(d)(8) (West Supp. 2012) (defendant not eligible for community supervision if convicted of murder and jury assesses punishment).

2

community supervision if convicted of murder. Self-defense and use of deadly force were discussed, but lesser-included offenses were not.[3]

After two days of testimony, Harris' attorney apparently learned of the 2007 amendment to Article 42.12, Section 4(d) of the Texas Code of Criminal Procedure,[4] which precludes a jury from recommending community supervision in murder cases. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(d). Harris' attorney moved for a mistrial, stating both parties thought Harris was eligible for community supervision. Counsel explained, "Clearly, it's an error both by the government and the defense. I should have known that he was not eligible for probation. First I ever heard of it was this morning." Harris' trial counsel argued that because both the State and the defense told the jury that Harris was eligible for community supervision if convicted of murder, the jury would infer—after hearing the evidence and receiving an instruction that he was, in fact, not eligible for community supervision—that the case "was worse than it was at the time we voir dired them." The trial court denied Harris' request for a mistrial. The guilt/innocence jury charge stated, at Harris' request, "You are instructed that if you find the defendant guilty of murder, he is not eligible for probation as punishment."

> In his motion for a new trial, Harris' trial lawyer filed an affidavit stating,
>
> I did not advise the Defendant that he was eligible for deferred adjudication probation from the Trial Judge after a plea of guilty or no contest to the charge of murder . . . . My misunderstanding of Defendant's eligibility for probation was a critical mistake . . . . I feel my failure to give competent advice did not permit Defendant to properly understand the law in relation to the facts and that he did not make an informed and conscious choice as to how to proceed to trial. My

---

[3]The trial court's jury charge included the lesser offenses of manslaughter and criminally negligent homicide.

[4]Act of May 21, 2007, 80th Leg., R.S., ch. 1205, § 3, 2007 Tex. Gen. Laws 4078, 4079 (current version at TEX CODE CRIM. PROC. ANN. art. 42.12, § 4(d) (West Supp. 2012)).

3

failure to inform Defendant that he was ineligible for community supervision from the Jury was not due to any trial strategy and simply was my failure to properly inform Defendant on this settled matter of law. Due to my professional conduct Defendant was denied the opportunity to consider a plea of guilty or no contest and to request deferred adjudication community supervision from the Trial Court. I believe Defendant would have made a different decision as to how to proceed to trial if counsel had correctly informed him of the law regarding community supervision.

Harris also presented his own affidavit, which stated,

Prior to trial, [my attorney] advised me that I was eligible for community supervision from the Jury. My lawyer did not advise me that the Judge could give me deferred adjudication community supervision if I entered a plea of guilty or no contest. I made by [sic] election to go to trial and to go to the Jury for punishment based on the incorrect representations of my lawyer. If I had been properly advised of my punishment options, I would not have decided to go to the Jury for punishment and would have requested the Court to considered [sic] deferred adjudication community supervision.

The trial court denied the motion for new trial without a hearing.

## II.     Ineffective Assistance of Counsel

Any allegation of ineffectiveness of counsel must be firmly founded in the record. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Harris bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *Id.* We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *see Strickland v. Washington*, 466 U.S. 668 (1984). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730, n.14 (Tex. Crim. App. 2006). The *Strickland* standard requires proof that "1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and 2) the deficient performance prejudiced

4

the defense." *Strickland*, 466 U.S. at 694; *Riley v. State*, 378 S.W.3d 453, 456 n.5 (Tex. Crim. App. 2012).

The second *Strickland* prong, prejudice, requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Id.* Reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.* When a claim of ineffectiveness is based on counsel's misunderstanding of the law regarding community supervision, there must be evidence that (1) the defendant was initially eligible for community supervision, (2) counsel's advice was not in furtherance of a valid trial strategy, (3) the defendant's election of the assessor of punishment was based upon counsel's erroneous advice, and (4) the results of the proceeding would have been different had his attorney correctly informed him of the law. *Riley*, 378 S.W.3d at 458.

## A. Deficient Performance

After 2007, juries can no longer recommend community supervision for defendants convicted of murder. *See* Act of May 21, 2007, 80th Leg., R.S., ch. 1205, § 3, 2007 Tex. Gen. Laws 4078, 4079. Under the law applicable to this case, Harris would have been eligible for community supervision, at the trial court's discretion, if and only if he pled guilty or nolo contendre and requested that the trial court defer adjudication of guilt and grant community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5 (West Supp. 2012).[5] In an affidavit

---

[5]In 2011 the Legislature passed additional legislation to curtail use of deferred adjudication community supervision in a murder case. As of September 1, 2011, even the trial judge cannot defer adjudication of guilt in a murder case unless it is shown that the defendant did not cause the death, did not intend to kill, and did not anticipate that a human life would be taken. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(d)(4). This provision applies only to offenses committed after the effective date of the Act—September 1, 2011. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3 (West Supp. 2012). The Texas Court of Criminal Appeals referred to this statue in *Riley* without

filed in support of his motion for a new trial, Harris claimed his decision to go to trial and his election of the jury as assessor of punishment was based on trial counsel's erroneous advice that the jury could recommend community supervision. He further avers that if he had been accurately advised, he would have asked the trial court to consider deferred adjudication community supervision.

This Court was faced with a very similar situation in *Riley v. State*, 345 S.W.3d 413 (Tex. App.—Texarkana 2011) (2-1 decision), *rev'd*, 378 S.W.3d 453 (Tex. Crim. App. 2012). In that case, Riley, like Harris, was told by his trial counsel that the jury had the authority to recommend community supervision even if they found him guilty of murder. Unlike in *Riley*, Harris' attorney discovered his legal misunderstanding during trial (rather than after the guilty verdict as occurred in *Riley*). A majority of this Court found in *Riley* that counsel's erroneous advice—that Riley was eligible for community supervision if recommended by the jury—was not sound trial strategy and that counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms. *Riley*, 345 S.W.3d at 418. The majority also found that because the error of Riley's trial attorney foreclosed the possibility of deferred adjudication community supervision, for which Riley was otherwise eligible, there was a reasonable probability that the result of the proceeding would have been different. This Court held that Riley was prejudiced by counsel's deficient performance. Based on the determination that Riley

---

noting that it did not become effective until September 1, 2011, and, therefore, was not applicable. *Riley*, 378 S.W.3d at 459 & n.27.

satisfied both prongs of the *Strickland* test, the majority reversed his conviction and remanded the case for a new trial. *Id.* at 419–20.

Here, we agree with the State's concession that the first prong of Strickland has been met. Counsel's advice was deficient and fell below an objective standard of reasonable performance in light of prevailing professional norms.

**B.       No Reasonable Probability of Different Outcome**

The Texas Court of Criminal Appeals reversed this Court's decision in *Riley*. The high court agreed with the conclusion that trial counsel's performance was deficient; it disagreed, however, with the majority's determination that counsel's deficiency affected the outcome of the case. *Riley*, 378 S.W.3d at 458. The high court pointed out that even if Riley had pled guilty or nolo contendere to the trial court, "the same results were available," that is, it was just as likely that the trial court would have sentenced Riley to fifty years' incarceration as it was for the jury to recommend that sentence. *Id.* at 459.

Harris attempts to distinguish *Riley* by pointing out that in *Riley*, lesser-included offenses were discussed in voir dire, and community supervision was available if Riley was convicted of a lesser crime, whereas here, the State did not discuss lesser-included offenses and simply told the jury Harris was eligible for community supervision. Also, here the trial court included a statement in the jury charge that Harris was not eligible for community supervision upon a conviction for murder. We do not find these circumstances sufficiently distinct from those in *Riley* to dictate a different outcome. More importantly, we do not find such factual distinctions relevant to the issue at hand. The Texas Court of Criminal Appeals was clear in *Riley* that "the

7

analysis of the prejudice prong turns on whether the deficiency made any difference to the outcome of the case." *Id.* at 458. The reviewing court must "determine whether any reasonable view of the record, viewed in the light most favorable to the trial court's ruling, could support the trial court's implicit findings." *Id.*

In the instant case, as in *Riley*, the trial court denied the defendant's motion for a new trial, which raised the ineffective assistance of counsel claim. "We must presume that all findings made by the trial judge were made in favor of the prevailing party, and hence, we assume that the trial judge implicitly found that there was no reasonable probability that the result of the proceeding would have been different." *Id.* Such a finding is a mixed question of law and fact, and a reviewing court must defer to a trial court's credibility determinations. Further, the "trial court did not have to accept appellant's claim that he would have changed his plea had he received correct advice." *Id.* More to the point, even if the trial court had accepted Riley's claim that he would have pled differently, "the issue remains whether correct advice would have changed the result of the proceeding." *Id.*

As in *Riley*, Harris presented defensive testimony urging self-defense, and the trial court charged the jury on lesser-included offenses. The Texas Court of Criminal Appeals in *Riley* pointed out that although the trial court could have considered the evidence and found Riley guilty of a lesser-included offense, by pleading guilty, Riley "would have waived his opportunity to argue" self-defense and sudden passion as he did at trial. *Id.* at 460. The same holds true for Harris.

8

As mentioned above, the trial court denied Harris' motion for a new trial, which raised the ineffective assistance of counsel claim. We must view the trial court's denial as an implicit finding that even if Harris had received correct advice, the result of the proceeding would not have changed. Nothing in the record demonstrates a reasonable probability that the outcome would have been different had counsel correctly advised Harris that a jury could not recommend community supervision upon a conviction of murder. Although the trial court made no findings of fact, we must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were made. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). Thus, "we assume that the trial judge implicitly found that there was no reasonable probability that the result of the proceedings would have been different" when he denied Harris's motion for a new trial. *Riley*, 378 S.W.3d at 459.

Harris has failed to meet his burden of proof under the second prong of *Strickland*, and, thus, his claim of ineffective assistance of counsel must fail. We overrule the first point of error.

## III. Court Costs Supported by Record

In his second point of error, Harris points out that the original clerk's record contained no certified bill of costs but that the trial court's judgment indicates Harris must pay $499.00 in court costs. The district clerk supplemented the record during the pendency of this appeal to include a certified bill of trial court costs.

"A clerk of a court is required to keep a fee record, and a statement of an item therein is prima facie evidence of the correctness of the statement." *Owen v. State*, 352 S.W.3d 542, 547

9

(Tex. App.—Amarillo 2011, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 103.009(a), (c) (West 2006)). "A cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost." TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2006). "In other words, a certified bill of costs imposes an obligation upon a criminal defendant to pay court costs, irrespective of whether or not that bill is incorporated by reference into the written judgment." *Owen*, 352 S.W.3d at 547. Absent a certified bill of costs, the record is insufficient to support the order of court costs.

The record now authorizes collection of the costs assessed and documented by the clerk of the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2006), art. 103.003 (West Supp. 2012); *Armstrong v. State*, 340 S.W.3d 759, 765 (Tex. Crim. App. 2011). Harris' second point of error is overruled.

We affirm the judgment of the trial court.


                                                    Jack Carter
                                                    Justice

Date Submitted:      July 11, 2013
Date Decided:        July 30, 2013

Do Not Publish

10