PD-0647-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/29/2015 12:57:52 PM
Accepted 6/1/2015 2:35:07 PM
ABEL ACOSTA
CLERK

NO. _____

IN THE

# COURT OF CRIMINAL APPEALS

OF TEXAS
AUSTIN, TEXAS

# JUAN DAVID GARZA, JR.

APPELLANT,

VS.

THE STATE OF TEXAS,
APPELLEE

# *APPELLANT'S*
# *PETITION FOR DISCRETIONARY REVIEW*

NO. 03-13-00180-CR
COURT OF APPEALS FOR THE
THIRD DISTRICT OF TEXAS AT AUSTIN

On appeal from Cause Numbers CR-08-0846
in the 22nd District Court of Hays County, Texas
Honorable Gary Steel, Presiding

KEITH S. HAMPTON
Attorney at Law
keithshampton@gmail.net
State Bar No. 08873230

CYNTHIA L. HAMPTON
Attorney At Law
hamplaw2@gmail.com
State Bar No. 11937450

ATTORNEYS FOR APPELLANT
1103 Nueces Street
Austin, Texas 78701
(512) 476-8484
(512) 477-3580 (Fax)

FILED IN
COURT OF CRIMINAL APPEALS

Oral Argument is Respectfully Requested

June 1, 2015

ABEL ACOSTA, CLERK

IDENTITY OF JUDGE, PARTIES AND COUNSEL

Pursuant to the provisions of Rule 68.4(a), Texas Rules of Appellate Procedure, the identity of the judge, parties and counsel are as follows:

**Judge:**     Honorable Gary L. Steele, 22nd Judicial District Court

**Parties:**     Juan David Garza

       State of Texas

**Counsel:**     Keith S. Hampton
       Cynthia L. Hampton
       1103 Nueces Street
       Austin, Texas 78701
       (Counsel for the Petition for Discretionary Review)

       Ricky D. Jones
       1108 Lavaca Street, 412416
       Austin, Texas 78714
       (Counsel for Appeal)

       Sherri Tibbe, Hays County District Attorney
       Brian Erskine, Hays County Assistant District Attorney
       Christopher P. Johnson,
       Hays County Assistant District Attorney
       Gerard Peaches, Hays County Assistant District Attorney
       Hays County District Attorney's Office
       Hays County Government Center
       712 Stagecoach Trail, Suite 2057
       San Marcos, Texas 78666

**TABLE OF CONTENTS**

PAGE

IDENTITY OF JUDGE, PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . 2

GROUNDS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**The Court of Appeals erred by concluding that professional errors do not violate the Sixth Amendment if committed "inadvertently."**

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-8

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Garza v. State*, No. 03-13-00180-CR (Tex.App. – Austin, delivered April 9, 2015)(not designated for publication)

# INDEX OF AUTHORITIES

*Garcia v. State*, 308 S.W.3d 62 (Tex. App. – San Antonio 2009, *no pet*.). . . . . 7-8

*Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App. 1991)(opinion on rehearing) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Strickland v. Washington*, 466 U.S. 688 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Williams v. State*, 301 S.W.3d 675 (Tex.Crim.App. 2009).. . . . . . . . . . . . . . . . 5-6

## RULES AND STATUTORY PROVISIONS

Tex.Penal Code § 21.021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tex.R.App.Proc. 66. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tex.R.App.Pro. 66.3(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tex.R.App.Pro. 66.3(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

Tex.R.App.Pro. 66.3(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tex.R.App.Pro. 66.3(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

## STATEMENT REGARDING ORAL ARGUMENT

Appellant has raised important questions of first impression in this Court and believes that oral argument would help clarify the issues presented in his petition for discretionary review.  Therefore he respectfully requests oral argument.

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

NOW COMES Juan David Garza, Appellant in this case, by and through his attorneys, Keith S. Hampton and Cynthia L. Hampton, and, pursuant to the provisions of TEX.R.APP.PRO. 66, *et seq.*, moves this Court to grant discretionary review, and in support will show as follows:

## STATEMENT OF THE CASE

Appellant was indicted for indecency with a child by contact. Tex. Penal Code §21.021(a) (West 2013); (CR, Vol. 1, p. 7). On January 23, 2013, Appellant entered a plea of not guilty. (Vol. 9, p. 33). After a jury trial, Appellant was found guilty. (Vol. 15, pp. 18-20). On February 1, 2013, the jury sentenced Appellant to prison for nine years, but recommended suspension of the sentence and imposition of a $5,000 fine. (Vol. 16, p. 153). On February 6, 2013, Appellant filed a motion for new trial and motion in arrest of judgment, which was overruled by operation of law. (CR, Vol. 1, p.136). On March 12, 2013, Appellant timely filed notice of appeal. (CR, Vol.1, p.150).

## STATEMENT OF PROCEDURAL HISTORY

Appellant's sole issue on appeal was ineffective assistance of counsel. The conviction was affirmed in an opinion not designated for publication. *Garza v. State*, No. 03-13-00189-CR (Tex.App. – Austin, delivered April 9, 2015)(not designated for publication). Appellant filed a motion for rehearing which the Court of Appeals denied on April 30, 2015. This petition is due to be filed on May 30, 2015. Because May 30th falls on a Saturday, this petition is due Monday, June 2, 2015, and therefore, it is timely filed.

### Ground for Review:

**The Court of Appeals erred by concluding that professional errors do not violate the Sixth Amendment if committed "inadvertently."**

### Argument

Appellant was charged with indecency with a child against his daughter, A.N. Appellant's counsel was aware that another daughter, S.G., had also accused him of indecency with a child, resulting in an indictment in Travis County. Trial counsel was given notice of the State's intent to introduce this extraneous offense against Appellant, specifically:

> [S.G.] told [her sister, A.N.] that the Defendant had touched the victim's privates. The Defendant would dress the victim and his hand would

brush against victim's butt and vagina. The victim got under the covers of Defendant's bed and Defendant touched her vagina over the clothes. The Defendant was crying because he had touched her vagina and he knew it was wrong. As Defendant was touching the victim, Defendant was breathing heavily and shaking.

(CR, Vol. 1, p. 69). Trial counsel confirmed he had watched both audio and a video wherein S.G. made her accusations. (Vol. 9, pp. 62-63).

The trial court held a hearing before any evidence regarding this extraneous act appeared before the jury. (Vol. 9, pp. 58-62). At this hearing, the State explicitly sought to introduce this extraneous offense to put "familial relationships ... in context," relying on *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App. 1991)(opinion on rehearing). (Vol. 9, pp. 57-59). Trial counsel was therefore well-aware his client was charged with sexual abuse against S.G. and that the State planned to introduce proof of this extraneous offense.

After the pretrial hearing, the trial court excluded this extraneous offense with a warning:

The ruling is that through this witness, at this time, I'm not going to allow the testimony [regarding S.G.]. And I want you to be careful – and I want the witness to listen to me, too. At this point I'm not allowing anything regarding [S.G.] and we'll approach before we get there.

(Vol. 9, p. 64).

Trial counsel then cross-examined Jones about her marriage, the different

homes she had lived in, the number of rooms in the homes, whether the rooms had windows and solid doors, whether A.N.'s bed was queen-sized, and other irrelevant facts. (Vol. 9, pp. 82-91). Eventually, trial counsel introduced evidence of the relationships within the family, suggesting during his cross-examination of Jones that Appellant had been a "really good father," was a "great guy," even the "backbone of the family." (Vol. 9, pp. 101-133; 156; 159-160).

In light of trial counsel's introduction of this evidence, the State sought to introduce proof that Appellant was not such a great guy or the fine father his attorney made him out to be. Specifically, the prosecution sought to show how Appellant sexually abused S.G. in exactly the same way he was alleged to have abused A.N.

Despite having opened the very door the State and trial court had so clearly identified, trial counsel objected when the prosecution sought to open it. Overruling the objection, the trial court stated, with some frustration:

> You've asked questions up to the present with this witness that's on the stand. You've asked questions about, you know, the family relationship. You've asked questions about: "Was he the backbone?" "Did he treat these children differently?"
>
> You've just gone into this area and then you're telling me, "Oh, but it's not fair for them to rebut any of that." And you have opened the door – you have kicked the door wide open on just about any subject inside this family by your cross-examination, which was hours.

(Vol. 10, p. 10).

Trial counsel argued, "You know, I really did not anticipate trying two cases in one and I didn't anticipate, you know, [S.G.'s case]." "[S.G.'s] outcry was not what I thought was ever going to enter this trial." (Vol. 10, pp. 10; 12). In other words, counsel somehow failed to perceive that the excluded extraneous offense became admissible because of his door-opening cross-examination, despite a written notice, offense reports, audio and video recordings, an indictment and a pretrial hearing.

In light of the open door, the trial court then permitted Jones, a detective, A.N. and S.G. herself to testify that Appellant molested S.G. as well. (Vol. 10, pp. 83-88; Vol. 11, pp. 102-171; Vol. 12, pp. 33-186).

The Court of Appeals agreed that counsel had opened the door to evidence of the extraneous offense against S.G. *Garza*, *slip op.* at 9 (Appendix, p. 9). However, the appellate court concluded he had done so "inadvertently," and thus no error had occurred. *Id.* Accordingly, under the Court of Appeals' Sixth Amendment analysis,[1] Appellant was afforded his right to the effective assistance of counsel.

Accidental errors are the antithesis of strategy. By definition, these errors

---

[1] The Court of Appeals mistakenly referred to Appellant as "Moore." *Garza*, supra, p. 2.

necessarily cannot be attributed to strategy. The Court of Appeals' equation of inadvertent errors with strategic decisions would remove errors altogether from well-established Sixth Amendment analysis. Review is thus necessary pursuant to Tex.R.App. Proc. 66.3 (b) & (c).

The appellate court relied on this Court's opinion in *Williams v. State*, 301 S.W.3d 675 (Tex.Crim.App. 2009), in which trial counsel was found effective despite the fact he opened the door to two extraneous murders. However, in *Williams*, counsel deliberately elicited this proof as part of his trial strategy, as the record plainly revealed:

> THE COURT: ... you understand that in asking about Crime Stoppers money and her bias and the fact that she was friends with Terrell Ball–
>
> [DEFENSE COUNSEL]: Yes. That opens the door.
>
> THE COURT: – that that opens the door.
>
> [DEFENSE COUNSEL]: Yes. And I've talked to my client and I've talked to him before this date and that's what we choose to do. So I understand it will open the door.

*Williams v. State* at 686. The Court of Appeals misconstrued *Williams.* Accordingly, this Court should grant review, pursuant to Tex.R.App. Proc. 66.3 (c) & (f), to clarify that *Williams* does not equate inadvertent acts with intentional, strategic decisions.

Trial decisions like those in *Williams* are strategic and are the opposite of

inadvertent acts or omissions. Strategic decisions are subject to a determination of objective reasonableness, while accidents are not because they are the result of no professional judgment at all. This Court should grant review to clarify this cornerstone of Sixth Amendment ineffective assistance analysis. Tex.R.App. Proc. 66.3 (b).

The Supreme Court of the United States has established the familiar ineffective assistance analysis. This analysis begins with the "strong presumption" that the challenged action "might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 688-90 (1984). This presumption must first be rebutted before the attorney's acts or omissions can be considered to be professional errors. *Id*. By equating accidental door-opening with strategy, the Court of Appeals transformed the "strong presumption" into an irrebutable one, contrary to well-established Sixth Amendment analysis. Review is thus necessary pursuant to Tex.R.App. Proc. 66.3 (b), (c) & (f).

Ineffective assistance jurisprudence forbids hindsight review, i.e., the temporal advantage of what counsel should or should not have done. *Strickland*, *supra* at 688-689. The Court of Appeals' analysis implicitly violated this prohibition by considering trial counsel's invitation to otherwise inadmissible testimony in the light

of its retrospective forgiveability.  In other words, this Court of Appeals considered counsel's clumsiness in hindsight, so that the "welcome-mat" he inadvertently splayed against the door of admissibility is not something to ever be called an "error." This error-removing analysis is grounded in exactly the sort of distorting ruminations *Strickland* meant to preclude.  Such after-the-fact judicial reflection to determine whether an act or omission is a forgiveable error contravenes a specific but fundamental requirement of Sixth Amendment analysis under *Strickland*.  Review is thus necessary pursuant to Tex.R.App. Proc. 66.3 (b), (c) & (f).

The Court of Appeals' opinion also conflicts with *Garcia v. State*, 308 S.W.3d 62 (Tex.App. – San Antonio 2009, *no pet.*).  In *Garcia*, trial counsel opened the door to extraneous sexual misconduct against another child when he asked whether he had ever been accused of a sex offense before, and he opened the door to various other bad acts when he asked him whether he had ever been arrested before.  *Garcia*, 308 S.W.3d at 66.  The Fourth Court of Appeals concluded there could have been "no reasonable trial strategy for *Garcia*'s counsel to elicit and open the door to the similar extraneous offense and the numerous instances of 'bad acts.'"  *Garcia*, 308 S.W.3d at 67.  In this case, there was likewise no reasonable trial strategy for trial counsel's door-opening questions, and the door-opening was as much professional error as the

counsel in *Garcia*. This Court should grant review to resolve the conflict between these two decisions, pursuant to Tex.R.App. Proc. 66.3(a).

The issue in this petition is narrow. Appellant does not seek a full Sixth Amendment ineffective assistance of counsel analysis from this Court. Instead, Appellant asks this Court to clarify that errors committed by trial counsel do not cease to be errors because they are committed accidentally. The question whether the error prejudiced Appellant is best left to the Court of Appeals.

## PRAYER FOR RELIEF

*WHEREFORE, PREMISES CONSIDERED*, Appellant respectfully prays that this Court grant discretionary review and, after full briefing on the merits, issue an opinion reversing the Court of Appeals' judgment and remanding this case to the appellate court for appropriate Sixth Amendment analysis.

Respectfully submitted,

_____
KEITH S. HAMPTON
SBN 08873230
keithshampton@gmail.com

_____
CYNTHIA L. HAMPTON
SBN 11937450
1103 Nueces Street
Austin, Texas 78701
(512) 476-8484
(512) 477-3580 (fax)
hamplaw2@gmail.com
ATTORNEYS FOR APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing *Petition for Discretionary Review* has been electronically delivered or mailed on this day, May 29, 2015, to the Hays County District Attorney's Office to christopher.johnson@co.hays.tx.us.

_____
KEITH S. HAMPTON

## CERTIFICATE OF COMPLIANCE

I hereby certify that this *Petition for Discretionary Review* contains 1490 words and complies with Rule 9.4(i)(3) and 9.4(i)(2)(D)of the Texas Rules of Appellate Procedure.

_____
KEITH S. HAMPTON

---
APPENDIX
---

*Garza v. State*, No. 03-13-00180-CR

(Tex.App. – Austin, delivered April 9, 2015)(not designated for publication)

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00180-CR

**Juan David Garza, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-08-846, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Juan David Garza, Jr. of the offense of indecency with a child by contact and assessed punishment at nine years' imprisonment and a $5,000 fine.[1] The district court rendered judgment on the verdict and, on the jury's recommendation, suspended imposition of the sentence and placed Garza on community supervision for ten years. In a single issue on appeal, Garza asserts that he received ineffective assistance of counsel during trial. We will affirm the judgment of conviction.

## BACKGROUND

Garza was charged with engaging in sexual contact with his stepdaughter, A.N., by touching her genitals. During trial, A.N., who was by then nineteen years old, testified that when

---

[1] *See* Tex. Penal Code § 21.11(a)(1).

she was eight years old, Garza had entered her bedroom at night, "cuddled with her," and then "pick[ed] [her] up and put [her] on top of him, with [her] legs around the sides of him; and he took his hands under [her] shorts, under [her] underwear, and touching [her] butt towards—[her] vagina in a stroking-type motion." Several days later, A.N. further recounted, she had reported this incident to her mother, Stephanie Jones, and also informed her that Garza had engaged in similar behavior on two or three other occasions. Jones also testified at trial and described A.N.'s account in a manner consistent with A.N.'s testimony. Jones added that she had also confronted Garza with A.N.'s allegations. In response, Jones indicated, Garza had not denied the allegation and had instead become "upset, very apologetic, emotional, crying, saying he was sorry, it was an accident." A.N. similarly testified that Garza had cried and apologized to her "for making [her] feel uncomfortable."

After confronting Garza, Jones had taken no further action in response to her daughter's allegations. Approximately five years later, however, A.N. made an outcry to her aunt, Carrie Jones. Carrie[2] testified that she had discussed the matter with her husband, who had notified CPS. Melissa Rodriguez, the program director of the children's advocacy center in Hays County, subsequently conducted an interview with A.N. in which A.N. told her that Garza had touched her "butt" and her "privates." A video recording of the interview was admitted into evidence. Other evidence considered by the jury, which we discuss in more detail below as it becomes relevant to Moore's issue on appeal, included the testimony of the investigating law enforcement officer, Lieutenant Jeri Skrocki of the Hays County Sheriff's Office; Garza's biological daughter, S.G., who

---

[2] We use her first name to distinguish her from Stephanie Jones.

2

was permitted to testify that Garza had engaged in similar sexual contact with her; and Garza, who denied that he had ever contacted A.N. or S.G. in a sexual manner.

The jury found Garza guilty as charged and assessed punishment as indicated above. After the district court rendered judgment on the jury's verdict and suspended imposition of the sentence, Garza filed a motion for new trial, which was denied by operation of law. This appeal followed.

## JURISDICTION

Before turning to the merits of Garza's appeal, the State argues that we lack jurisdiction because Garza failed to timely file his notice of appeal.[3] As a general rule, a defendant must file his notice of appeal "within 30 days after the day sentence is imposed or suspended in open court."[4] However, a defendant may extend the appellate deadline to 90 days if he "timely files a motion for new trial."[5] A motion for new trial is timely if filed no later than 30 days after the date the trial court imposes or suspends sentence in open court.[6] Garza's sentence was suspended in open court on February 1, 2013. On February 6, he timely filed a motion for new trial, thereby extending the deadline to file his notice of appeal to 90 days. Garza filed his notice of appeal on March 12, 2013, within the 90-day deadline.

---

[3] *See Perez v. State*, 424 S.W.3d 81, 85 (Tex. Crim. App. 2014) ("'A timely notice of appeal is necessary to invoke a court of appeals' jurisdiction.'" (quoting *Olivo v. State*, 918 S.W.2d 519, 522 (Tex. Crim. App. (1996))).

[4] Tex. R. App. P. 26.2(a)(1).

[5] *Id*. R. 26.2(a)(2).

[6] *Id*. R. 21.4(a).

The State contends that Garza's motion for new trial was ineffective to extend the appellate deadline because the record does not demonstrate that he presented that motion to the district court.[7] However, Rule 26.2 extends the appellate deadline upon the timely "filing" of a motion for new trial.[8] There is no additional requirement of presentment. In contending otherwise, the State cites to *Carranza v. State*, in which the Court of Criminal Appeals held that in order to preserve error relating to a trial court's refusal to hold a hearing on a motion for new trial, an appellant is required to both file the motion and present it to the trial court.[9] However, that rule has no effect on the deadline for filing a notice of appeal. Because Garza timely filed his notice of appeal within the 90-day deadline triggered by the timely filing of his motion for new trial, we have jurisdiction over this appeal.[10] Accordingly, we overrule the State's challenge to this Court's jurisdiction.

**MERITS**

In his sole issue on appeal, Garza asserts that his trial counsel rendered ineffective assistance. Specifically, Garza complains that trial counsel provided ineffective assistance by: (1) "opening the door" to the admission of extraneous-offense evidence concerning Garza's alleged sexual contact with his biological daughter, S.G.; (2) failing to call an expert witness to provide

---

[7] *See id.* R. 21.6 ("The defendant must present the motion for new trial to the trial court within 10 days after filing it, unless the trial court in its discretion permits it to be presented and heard within 75 days from the date when the court imposes or suspends sentence in open court.").

[8] *See id*. R. 26.2.

[9] *See* 960 S.W.2d 76, 79-80 (Tex. Crim. App. 1998).

[10] *See* Tex. R. App. P. 26.2(a)(2).

4

testimony concerning false allegations of sexual abuse; and (3) conducting himself "inappropriately" during trial, including being "repeatedly reprimanded" by the district court and ultimately held in contempt.

"Ineffective-assistance-of-counsel claims are governed by the familiar *Strickland* framework: To prevail, the defendant must show that counsel's performance was deficient and that this deficient performance prejudiced the defense."[11] "An attorney's performance is deficient if it is not within the range of competence demanded of attorneys in criminal cases as reflected by prevailing professional norms, and courts indulge in a strong presumption that counsel's conduct was *not* deficient."[12] "If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'"[13] In other words, in the absence of a record explaining the reasons for counsel's decisions, we will not find counsel's performance deficient if any reasonably sound strategic motivation can be imagined.[14]

*Strickland* establishes a similarly high bar for establishing prejudice: "A defendant suffers prejudice if there is a reasonable probability that, absent the deficient performance, the outcome [of the proceeding] would have been different."[15] "A reasonable probability is a probability

---

[11] *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[12] *Id*. (citing *Strickland*, 466 U.S. at 689).

[13] *Id*. at 308 (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012)).

[14] *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

[15] *Nava*, 415 S.W.3d at 308 (citing *Strickland*, 466 U.S. at 694).

sufficient to undermine confidence in the outcome."[16] "It will not suffice for Appellant to show 'that the errors had some conceivable effect on the outcome of the proceeding.'"[17] "Rather, he must show that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"[18]

"It is a rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim."[19] As a result, "claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus."[20]

**Extraneous-offense evidence**

Garza first asserts that his trial counsel rendered ineffective assistance by "opening the door" to the admission of extraneous-offense evidence related to Garza's alleged sexual contact with S.G. S.G. is the biological daughter of Garza and A.N.'s mother, Stephanie Jones, and is thus A.N.'s half-sister. A.N. is the older of the two by approximately ten years.

---

[16] *Id.*

[17] *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693).

[18] *Id.* (quoting *Strickland*, 466 U.S. at 695).

[19] *Nava*, 415 S.W.3d at 308 (citing *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

[20] *Lopez*, 343 S.W.3d at 143 (citing *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002); *Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex. Crim. App. 2004); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)).

In 2011 or 2012, after charges had been filed against Garza in this case, S.G. told A.N. that Garza had touched her genitals, too. At trial, the State initially attempted to elicit evidence of S.G.'s outcry during its direct examination of Stephanie Jones. The district court excluded the evidence at that juncture, sustaining objections by Garza's counsel that the testimony sought to be elicited was inadmissible hearsay and would have an unfairly prejudicial effect substantially outweighing its probative value.[21] However, the district court ultimately permitted the State to explore the subject after Garza's trial counsel extensively cross-examined Jones regarding past statements in which she had purportedly characterized Garza favorably to police investigators as a "great guy" and the "backbone of the family." Concluding that Garza's counsel had "kicked the door wide open on just about any subject inside this family by your cross-examination," the district court permitted the State to elicit testimony from Jones on redirect regarding S.G.'s outcry and later allowed S.G. herself to testify to the underlying alleged conduct.

As support for his assertion that opening the door to extraneous-offense evidence constitutes deficient performance, Garza relies primarily on *Garcia v. State*.[22] During the defendant's testimony in that case, trial counsel asked the defendant if he had "ever sexually assaulted anybody" or had "ever been accused of sexually assaulting anybody," and the defendant answered both questions in the negative.[23] The State then proceeded, during its cross-examination of the defendant and later during its case in rebuttal, to present evidence tending to show that the

---

[21] *See* Tex. R. Evid. 403, 801.

[22] 308 S.W.3d 62 (Tex. App.—San Antonio 2009, no pet.).

[23] *Id*. at 66.

7

defendant had been accused of sexual assault in the past.[24]  Although trial counsel objected to the admission of this evidence on multiple grounds, the trial court overruled the objections, concluding that trial counsel had opened the door to the extraneous-offense evidence "by inquiring about prior sexual assaults as well as by offering evidence of the defendant's good character."[25]  The reviewing court concluded that counsel's conduct constituted deficient performance:

> Here, by eliciting testimony from Garcia on direct examination broadly disclaiming that he had ever sexually assaulted someone, defense counsel opened the door for the State to cross-examine Garcia, and to present rebuttal evidence of an extraneous offense of the same character as the charged aggravated sexual assault.  Similarly, by eliciting testimony that Garcia was a "law abiding" citizen, defense counsel opened the door for the State to cross-examine Garcia concerning other "bad acts" to correct any false impression created by his direct testimony and to impeach his credibility. . . .  Given the inherently prejudicial nature of extraneous offense evidence, the fact that the evidence would not have been otherwise admissible by the State during guilt/innocence, and the fact that Garcia's defense rested almost entirely on his credibility, there could have been no reasonable trial strategy for Garcia's counsel to elicit and open the door to the similar extraneous offense and the numerous instances of "bad acts."[26]

We conclude that *Garcia* is distinguishable from this case.  Unlike *Garcia*, trial counsel here did not attempt to "broadly disclaim" that Garza had engaged in other sexual misconduct or suggest that Garza was a "law-abiding" citizen.  Instead, the focus of counsel's cross-examination was to emphasize that Jones, while claiming to have heard outcries of child molestation by Garza, had quite incongruously termed him a "great guy" and the "backbone of the family" to

---

[24]  *Id*.

[25]  *Id*. at 66-67.

[26]  *Id*. at 68 (internal citations omitted).

8

police investigators thereafter. In short, counsel's questions were in the nature of impeachment of Jones with prior inconsistent statements, seeking to discredit her prior testimony recounting the alleged outcries and her truthfulness generally.[27] Counsel likewise divulged on the record that his examination of Jones also sought to elicit evidence "about motive on these people's parts to come up with this tale and to back it up every way they can."

We cannot conclude on this record that this constitutes deficient performance. Jones was the State's designated outcry witness during trial.[28] Her credibility was thus a critical issue in the case. It would not fall below an objective standard of reasonableness for trial counsel, as part of his defensive strategy, to aggressively and thoroughly attack Jones's credibility on cross-examination, including on matters relating to her past favorable observations, opinions, and statements concerning Garza, even if in doing so counsel might have inadvertently opened the door to evidence related to S.G.'s outcry.[29] On this record, we cannot conclude that trial counsel's

---

[27] In fact, as the district court observed during a bench conference, Garza's counsel mounted "an attack on [Jones's] character for about three of the four hours of cross-examination." Throughout this cross-examination of Jones and other witnesses for the State, counsel repeatedly attempted to attack their credibility and implied that they were lying about various aspects of either the incident or the investigation.

[28] *See* Tex. Code Crim. Proc. art. 38.072.

[29] *See, e.g.*, *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (finding no deficient performance when trial counsel opened door to evidence of extraneous murders allegedly committed by defendant during testimony of State's witness when trial counsel did so in order to show that witness had "a bias as to why she's testifying"); *Johnson v. State*, 432 S.W.3d 552, 558-60 (Tex. App.—Texarkana 2014, pet. ref'd) (finding no deficient performance when trial counsel inadvertently opened door to extraneous offenses when "there is nothing in the record here to suggest that defense counsel purposely elicited extraneous-offense evidence from his client or otherwise intentionally opened the door to such evidence"); *Josey v. State*, 97 S.W.3d 687, 695-96 (Tex. App.—Texarkana 2003, no pet.) (finding no deficient performance when trial counsel opened door to evidence of extraneous sex offense during cross-examination of State's outcry witness;

9

cross-examination of Jones was outside "the range of competence demanded of attorneys in criminal cases."³⁰

**Expert testimony**

Garza next complains of trial counsel's failure to present expert testimony "regarding a child's motives for making false allegations of sexual misconduct against a parent." Such testimony was necessary, Garza contends, to rebut testimony from the State's experts, specifically Jeri Skrocki and Melissa Rodriguez."³¹

Assuming without deciding that the failure to call an expert witness in this case would constitute deficient performance, we cannot conclude on this record that Garza was prejudiced by any such deficiency. To prove prejudice from the failure to call expert witnesses, the record must show that such witnesses were available to testify and that appellant would have benefitted from their testimony.³² Here, the record contains no such showing. Prior to trial, two individuals were

---

concluding that "[c]ounsel's inquiry represents an attempt to undermine the credibility of . . . [the outcry witness] . . . . We cannot say attempting to discredit one . . . of the State's primary witnesses is improper trial strategy or otherwise falls below the level of an objectively reasonable standard of conduct"). *Cf. Robertson v. State*, 187 S.W.3d 475, 484-86 (Tex. Crim. App. 2006) (finding trial counsel's performance deficient when counsel *intentionally* elicited testimony from defendant related to defendant's prior convictions, as part of trial strategy to prove that defendant was being truthful).

³⁰ *See Nava*, 415 S.W.3d at 307.

³¹ Skrocki provided testimony relating to the concept of "delayed outcries" and the process of "grooming," whereby an abuser will attempt to "desensitize" a potential victim to make them "feel more comfortable with sexual activity." Rodriguez provided similar testimony relating to the "grooming" process and also provided testimony relating to the fabrication of outcries.

³² *See Perez*, 310 S.W.3d at 894 (citing *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)); *Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986); *Washington v. State*, 417 S.W.3d 713, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

10

designated as possible expert witnesses by the defense—Shelley Graham, a licensed professional counselor, and Matthew Ferrara, a psychologist. The specific matters to which they would have testified if called are not disclosed in the record. A third possible expert, identified only as George Parker, was mentioned by trial counsel during a hearing on counsel's motion for continuance. At that hearing, counsel disclosed that Graham "said she doesn't feel competent to testify about a false outcry" and that Parker would not be available to testify until several days after the trial was scheduled to conclude. Additionally, even if Parker had been available to testify, there is nothing in the record summarizing what his testimony would have been. Thus, on this record, there is no way for this Court to determine whether Garza would have benefitted from the testimony of any of the possible experts for the defense. Accordingly, we cannot conclude that there is a reasonable probability that, absent trial counsel's failure to call an expert witness, the outcome of the proceeding would have been different.[33]

**Counsel's behavior during trial**

Finally, Garza asserts that trial counsel was ineffective in the manner in which he conducted himself during trial. Specifically, Garza refers to several occasions in which the district court, outside the presence of the jury, admonished trial counsel for not following the court's instructions and repeatedly disagreeing with the court's evidentiary rulings, including its ruling that

---

[33] *See, e.g.*, *Ex parte Flores*, 387 S.W.3d 626, 638 (Tex. Crim. App. 2012); *Perez*, 310 S.W.3d at 894-95; *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007). *Cf. Ex parte Overton*, 444 S.W.3d 632, 640-41 (Tex. Crim. App. 2014) (finding prejudice prong satisfied when record included summary of expert's qualifications and specific matters to which expert would have testified; concluding that expert's "credibility combined with his testimony would have had a strong impact on the jury and sufficiently undermine[d] the outcome of the trial").

11

counsel had "opened the door" to S.G.'s outcry. Additionally, on the first day of trial, outside the presence of the jury, the district court held trial counsel in contempt after he had asked a witness a question that the court had instructed him not to ask.[34]

Assuming without deciding that counsel's conduct during trial fell below an objective standard of reasonableness, there is nothing in the record to suggest that trial counsel's conduct influenced the jury's verdict in any manner or that the jury would have reached a different verdict absent counsel's conduct. Moreover, the district court's admonishments and sanctions of trial counsel took place outside the presence of the jury. On this record, Garza has failed to demonstrate that there is a reasonable probability that, absent counsel's unprofessional conduct, the result of the proceeding would have been different.[35]

We overrule Garza's sole issue on appeal.

---

[34] During a bench conference, trial counsel had explained to the district court that he intended to question A.N.'s mother regarding an alleged incident in which A.N. had "demanded" that her maternal grandfather assist her in procuring the "day-after abortion pill." The district court responded to the request as follows: "I can't imagine that's relevant. If you want a hearing on that at the end of the day, I'll give it to you, but, no." Almost immediately thereafter, trial counsel proceeded to question the witness regarding the alleged incident, prompting the district court's contempt ruling. Trial counsel insisted that he had not intended to disobey the court, but had merely misunderstood the court's ruling.

[35] *See White v. State*, 190 S.W.3d 226, 230 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Devis v. State*, 18 S.W.3d 777, 785-87 (Tex. App.—San Antonio 2000, no pet.); *see also Hansley v. State*, No. 01-12-01023-CR, 2014 Tex. App. LEXIS 80, at *6-7 (Tex. App.—Houston [1st Dist.] Jan. 7, 2014, pet. ref'd) (mem. op., not designated for publication) ("While trial counsel's behavior and the sanctions meted out by the trial judge suggest a want of professionalism, the alleged events are not sufficient to establish ineffective assistance under *Strickland*."); *Samuels v. State*, No. 05-03-00683-CR, 2004 Tex. App. LEXIS 4575, at *3-4 (Tex. App.—Dallas May 20, 2004, pet. ref'd) (not designated for publication) (counsel being held in contempt does not "invariably" lead to conclusion that counsel provided ineffective assistance).

**CONCLUSION**

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed:   April 9, 2015

Do Not Publish